FREDERICK v. CITY OF GLOVERSVILLE.

(Supreme Court, Appellate Division, Third Department. March 7, 1906.)

MUNICIPAL CORPORATIONS—JUDGMENTS—ENFORCEMENT—EXECUTION.

The charter of the city of Gloversville (Laws 1899, p. 612, c. 275, § 242), declares that no judgment against the city shall be enforceable by execution until an annual tax has been levied and collected subsequent to the docketing of the judgment. Section 70 (page 538) requires the council on or before March 1st to make an estimate of moneys needed for city expenses, and gives it power to raise by taxation the moneys named in the estimate and such further sums for improvements "and payments as specified herein," and grants the council power to raise money to pay judgments in addition to the other sums. *Held*, that an estimate of city expenses made March 1st by the council did not exhaust its power until it ratified the tax as extended on the tax roll, so that, where such ratification was not made until July, the council should have included a judgment docketed in April, and execution thereon would not be stayed.

Appeal from Special Term, Fulton County.

Action by Peter Frederick against the city of Gloversville. From an order vacating and setting aside an execution issued to plaintiff, he appeals. Reversed.

The execution was issued September 14, 1905, upon a judgment docketed in the clerk's office of said county upon the 8th day of April, 1905. Section 242 of the city charter (chapter 275, p. 612, Laws 1899) provides: "Judgments against city unenforceable until after annual tax.—No judgment recovered against said city shall be enforceable by execution until after an annual tax has been levied and collected thereon subsequent to the docketing of said judgment in the clerk's office of the county of Fulton." Section 70 (page 538) of the charter declares that the fiscal year ends December 31st and that the common council shall on or before March 1st make a careful estimate of all moneys needed for the city expenses for the current year, except for school purposes, over and above the funds available, which estimate shall be made out in items and designate the sum or sums for the various city purposes, which estimate shall not in the aggregate exceed 1 per cent. upon the last preceding assessment roll. It gives the common council the right to raise by taxation the moneys named in said estimate, and such further sums as shall be certified by the board of education, and such further sums for street improvements "and judgments as specified herein." It then provides: "The said common council shall also have the power to raise the amount necessary to pay any judgment or judgments against said city, with interest thereon, in addition to such other sums as are allowed as aforesaid." Section 71 (page 540) provides that, before any resolution or ordinance ordering a tax shall take effect, it must be approved by the mayor. March 1, 1905, the common council made the estimate containing a total of $82,725 for city purposes and $56,480 for school purposes, making a total of $139,205, and resolved that the said sum be levied and assessed upon the taxable inhabitants and property of said city. This resolution was duly approved by the mayor. Pursuant to section 75 (page 543) of the charter, the assessors of the city, during the months of March and April, made the annual assessment rolls, and upon May 15th, after the proper notice and review, the assessors delivered their rolls, completed as required by law, to the city clerk. Thereupon he, pursuant to section 77 (page 544) under the direction and supervision of the common council, extended the tax upon said rolls, and on the 10th day of July, by resolution duly adopted, the common council ratified and confirmed said tax as extended, and directed a warrant to issue to the city chamberlain for the collection of said tax, which warrant was that day delivered, and on the 16th day of September, 1905, when said execution was issued, there had been collected of the said city tax, as appears by plaintiff's affidavits, $83,265.-50, and of the school tax $55,665.33.

97 N.Y.S.—70

Argued before PARKER, P. J., and SMITH, CHESTER, KEL-
LOGG, and COCHRANE, JJ.

M. D. Murray (Andrew J. Nellis, of counsel), for appellants.
William A. MacDonald, for respondent.

JOHN M. KELLOGG, J. While the common council is directed by
section 70 (Laws 1899, p. 538, c. 275) to make its estimate for city pur-
poses, it is not required on that day to pass any resolution directing that
the tax be levied upon the city. That resolution may be adopted at
any time before the assessment roll is extended, as required by section
77 (page 544). That section directs that, as soon as practicable after
any tax shall have been ordered by the common council to be raised,
the clerk, by the direction and under the supervision of the common
council, shall extend it. The passing of the resolution March 1st,
directing the levy of the tax mentioned in the estimate, did not ex-
haust the power of the common council to direct the collection of any
items other than those required to be stated in the estimate. A judg-
ment recovered against the city is not required to be stated in the esti-
mate, and therefore could be included in the tax levy at any time before
the tax is extended. Section 74 (page 543) provides that "all taxes
assessed in said city in any year shall, if practicable, be included in one
assessment and collected under and by virtue of the same tax warrant."
This provision seems to imply that different items may be ordered at
different times to be assessed, but that the orders shall be made before
the tax is finally extended.

After the making of the estimate, and the resolution of March 1st, the
common council passed no other resolution upon the subject of the tax,
or its collection, until July 10th, when it ratified and confirmed the tax
as extended, and directed the warrant to issue to the chamberlain for
the collection of the tax, and thus effectually levied the tax. There
seems to be no reason why the common council of the city should not
have included this judgment in the amount to be raised by taxation
that year. The judgment was due, and the duty rested upon the city to
pay it, and it was therefore the duty of the common council to provide
for its payment in the approaching tax levy. The plain intent of the
statute is that the city, after the rendition of a judgment, shall have
a proper time in which to raise the money by taxation; it being assumed
that it has no money on hand properly applicable to its payment, and
that unless a stay is put upon the execution the city's property may be
sold and costs incurred against it at a time when it is unable to pay the
money. Those reasons do not apply here, for the city had ample time
to include this judgment in the tax levy, and it was its duty so to do.
Therefore, with reference to this judgment, the tax is not deemed to be
levied until the common council was powerless to include it in the
annual levy. Any other construction would work a hardship to a judg-
ment creditor of the city. It is evident that this judgment, not being
included in the tax levy, could not be realized from the tax of 1905, and
it would be a technical construction of the statute to say that an ex-
ecution could not issue on this judgment until every cent of the tax
had been collected; for the collection of this tax could not affect the

plaintiff nor aid the defendant. The tax is raised solely for other purposes, and the moving papers show that, if it was fully paid, there would be nothing available with which to pay the plaintiff's judgment. We may therefore treat the tax for city purposes as substantially collected before the execution was issued.

The order setting aside the execution was therefore erroneously made, and is reversed, with costs.

Order reversed, with $10 costs and disbursements. All concur.